UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 1: 07-cr-146-006 |
| JOHN PAUL HASSLER | ) ) ) | *Judge Edgar* |

**MEMORANDUM**

Before the Court is the motion of defendant John Paul Hassler [Doc. No. 169] to suppress evidence seized by Rhea County, Tennessee, law enforcement officers during the early morning hours of January 23, 2007. On April 10, 2008, this Court held a hearing on the motion. This memorandum is the Court's findings of fact and conclusions of law.

**I.    Findings of Fact**

During the evening of January 22, 2007, Rhea County Deputy Rusty Rogers was told by fellow Deputy Mike Bice that Bice had information from a confidential informant that defendant would be driving along State Highway 68 that evening carrying a controlled substance. However nothing untoward was observed before midnight, and Deputy Bice left the scene. Shortly after midnight Deputy Rogers observed a 1999 model Ford Mustang, which he knew to belong to Defendant, proceeding East along Highway 68. Deputy Rogers immediately called Deputy Bice on a cell phone and proceeded to follow the vehicle. The vehicle swerved across the center line approximately five times as it reached the brow of the Cumberland Plateau and proceeded down the mountain. Rogers stopped the vehicle, when it turned onto Cemetery Road, by turning on his blue lights.

The driver of the vehicle turned out to be Samantha Reynolds, a co-defendant in this case. When Deputy Rogers advised her of the swerving, Reynolds conceded that she was having a difficult time steering the Mustang because the front end was "pulling." The Defendant had been riding in the front passenger seat. When Deputy Rogers asked Reynolds for consent to search the vehicle, she said that she did not own the vehicle, and Rogers would have to talk to the Defendant Hassler. While Rogers was checking out Reynolds' drivers license and giving her a field sobriety test (which she passed), Deputy Bice arrived. Bice asked Defendant for consent to search the vehicle. Defendant declined to give such consent. Bice then called for K-9 officer Rocky Hill, who arrived at the stop location in 20 minutes or less with his dog, "Zappa." Hill has 20 years experience as a dog handler. Zappa is an accomplished drug detection dog, with experience in Iraq. Officer Hill trains the dog daily, and Zappa is 98% accurate when seeking drugs. The dog alerted on the vehicle, which was then searched. The officers found marijuana behind the driver's seat. The elapsed time from the initiation of the stop until the finding of the marijuana was less than thirty minutes.

II.   **Conclusions of Law**

The government initially claims that Defendant Hassler has no standing to object to the search of the vehicle. The court notes that the suppression hearing established that Mr. Hassler owned the vehicle. Therefore, as the owner, he has standing to object to the search of the vehicle. *See e.g. United States v. Williams*, 354 F.3d 497, 511 (6th Cir. 2003) (noting that "'suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself . . .'") (quotation omitted)).

Defendant Hassler claims that the law enforcement officers lacked probable cause to stop

his vehicle, and as a result, the search following the stop violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *Whren v. United States*, 517 U.S. 806, 809 (1996). A temporary detention during a vehicle stop constitutes a seizure pursuant to the Fourth Amendment. *Whren*, 517 U.S. at 809-810. In *Whren* the Supreme Court emphasized that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." 517 U.S. at 810 (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)). *See also, United States v. Palomino*, 100 F.3d 446, 448 (6th Cir. 1996) (concluding "'so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment'") (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993)).

In *Whren* the Supreme Court addressed whether a search of a vehicle and seizure of illegal drugs violated the Fourth Amendment where the officers stopped the car without probable cause or reasonable suspicion to believe that defendants were participating in illegal drug-dealing activity and where the asserted ground for stopping the vehicle, a minor traffic violation, was allegedly pretextual. 517 U.S. at 808. The defendants in that case claimed that because there are so many minor traffic rules, it would be impossible for any person whom a law enforcement officer wanted to stop to escape a vehicle stop due to the infeasibility of complying with all minor traffic statutes and regulations. The Supreme Court disagreed. It held that where the "officers had probable cause to believe that petitioners had violated the traffic code," the

-3-

vehicle stop was "reasonable under the Fourth Amendment" and the evidence discovered upon the search of the vehicle was "admissible."

As in *Whren*, the driver of the vehicle in this case, Ms. Reynolds, engaged in a violation of traffic laws by swerving the vehicle over the yellow line in the middle of the road several times. Tennessee's traffic laws provide:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety; . . .

Tenn. Code Ann. § 55-8-123(1). The Sixth Circuit has determined that repeated violation of this statutory provision provides probable cause for a vehicle stop. *See e.g. United States v. Little*, 1999 WL 196515, *4, 178 F.3d 1297 (6th Cir. 1999) (crossing into shoulder of road twice violated Tenn. Code Ann. § 55-8-123(1) and provided probable cause for stop); *United States v. Palomino*, 100 F.3d 446, 448 n.1 (6th Cir. 1996) (officer had probable cause to believe that traffic violations had occurred where driver crossed "two lanes of travel at once, was straddling the right lane, and was weaving back and forth between the right lane and the emergency lane" in violation of Tenn. Code Ann. § 55-8-123). Thus, Ms. Reynolds' swerving over the center line on five separate occasions provided probable cause to stop the vehicle, regardless of whether Deputy Rogers suspected other illegal activity might be occurring in the Defendant's car.

Defendant Hassler next complains about the length of the detention. "The Fourth Amendment . . . requires officers to have reasonable suspicion of criminal activity to detain temporarily for investigation either an individual or his belongings." *United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In addition, "[o]fficers

must diligently pursue a means of investigation likely to confirm or dispel their suspicions quickly." *Avery*, 137 F.3d at 349 (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

The Sixth Circuit has cautioned courts that "one must be mindful of the police officer's duty to conduct the stop with the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Hill*, 195 F.3d 258, 270 (6th Cir. 1999) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)). However, the Sixth Circuit has also determined that delays of thirty minutes or less while an officer verifies or dispels his suspicion is not unreasonable. *See e.g.*, *Avery*, 137 F.3d at 351 (upholding delay of twenty-five minutes as not unreasonable); *United States v. Knox*, 839 F.2d 285, 290 (6th Cir. 1988) (finding that delay of thirty minutes was not unreasonable). As this court has found, the stop lasted less than thirty minutes. This length of time is not unreasonable given the fact that it took a few minutes for Deputy Rogers to check the validity of Ms. Reynolds' license. In addition, Deputy Rogers called in assistance from the K-9 officer due to Defendant Hassler's refusal to consent to the search of the vehicle. It took a few minutes for the K-9 officer to arrive on the scene. Given the facts of this case, the court concludes that the length of detainment of less than thirty minutes was not an unreasonable seizure that violated the Fourth Amendment.

Finally, "[a] positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393-394 (6th Cir. 1994). In this case, Zappa, a highly-trained dog with a high rate of accurate alerts, alerted to Defendant Hassler's vehicle. Zappa's alert established probable cause for the presence of a controlled substance. Therefore, based on the analysis *supra*, the search and seizure in this case did not violate the Fourth Amendment.

### III. Conclusion

Defendant Hassler's motion to suppress based on an illegal search and seizure will be DENIED.

A separate order will be entered.

                                       */s/ R. Allan Edgar*
                                       R. ALLAN EDGAR
                             UNITED STATES DISTRICT JUDGE